FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 21 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Gregory Vasillie Anderson** | ) | |
| | ) | |
| | ) | **Case No. 09-33431** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| **Gregory Vasillie Anderson** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary Proceeding** |
| | ) | **No. 14-03054** |
| v. | ) | |
| | ) | |
| **Cellco Partnership** | ) | |
| *dba* **Verizon Wireless** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING MOTION TO SET ASIDE ARBITRATION AWARD AND
### CONFIRMING ARBITRATION AWARD

**THIS MATTER** is before the Court on a review of the Plaintiff's Motion to Set Aside

Arbitration Award ("Motion").  In the Motion, the Plaintiff asks the Court to overturn an

arbitration decision that denied his request for recovery under 11 U.S.C. § 362(k), the Telephone

Consumer Protection Act (the "TCPA"), and the North Carolina Debt Collection Act (the

"NCDCA").  The Defendant's Response in Opposition to the Motion to Set Aside Arbitration

Award ("Response") asks for the arbiter's decision to be confirmed.[1]   As will be discussed, there

is no adequate basis to overturn the arbiter's award, and the award should stand as decided.

### Procedural Background

The Plaintiff filed case no. 09-33431 under Chapter 7 of the Bankruptcy Code on

December 10, 2009, and case no. 09-33431 closed without event on November 30, 2010.  Yet,

over two and a half years later, the Plaintiff filed suit in the United States District Court for the

Western District of North Carolina on June 1, 2013 seeking recovery under § 362(k), the TCPA,

the NCDCA, and other claims under North Carolina tort law.  Complaint, *Anderson v. Cellco*

*P'ship* (*In re Anderson*), No. 3:13-cv-00334-FDW-DLH (W.D.N.C. June 1, 2013) (the

"Complaint").  On February 6, 2014, the District Court referred the Complaint to this Court, and

adversary proceeding no. 14-03054 was opened the same day.[2]

Instead of proceeding before this Court, the parties agreed to adjudicate the Plaintiff's

claims before an arbiter, and a Consent Order was entered in adversary proceeding no. 14-03054

on May 21, 2014 that allowed the parties to proceed to arbitration.[3]  The Consent Order provided,

in relevant part, that "this Court or other court of competent jurisdiction, shall only confirm

without comment on such court's view of the arbitrator's application of the law, or, alternatively,

only vacate, modify or correct the award, on grounds specifically set forth in 9 U.S.C. §§ 10(a)

or 11."  Consent Order, Doc. No. 17, p. 2.  The parties eventually agreed on an arbiter at the

---

[1] The Motion and the Response were filed with the District Court, and the District Court subsequently referred this matter to this Court.  However, neither the Motion nor the Response was re-filed with this Court, so the references/citations made to the Motion or Response in this Order refer to how they appear on the District Court's docket, *Anderson v. Cellco P'ship* (*In re Anderson*), No. 3:13-cv-00334-FDW-DLH.  The Motion is available at docket number forty (40), and the Response is available at docket number forty-three (43).

[2] On February 11, 2014, the court entered an order that reopened case no. 09-33431 *nunc pro tunc* to February 6, 2014.

[3] The Court notes that claims for violations of the automatic stay are "core" matters, 28 U.S.C. 157(b)(2), and are not normally the subject of arbitration.  The Court would not have been inclined to send this case to an arbiter had the arbitration not been requested by both parties.

suggestion of the Plaintiff,[4] and the parties further agreed that the arbiter would provide an intermediate amount of explanation as to his decision, Exhibit 2 of Defendant's Response in Opposition to Motion to Set Aside Arbitration Award at 3, *Anderson v. Cellco P'ship* (*In re Anderson*), No. 3:13-cv-00334-FDW-DLH (W.D.N.C. Feb. 29, 2016) (No. 43-3).

The arbiter was tasked with determining whether the Defendant was liable to the Plaintiff for violations of § 362(k), the TCPA, and the NCDCA.[5] Exhibit A of Motion to Set Aside Arbitration Award, *Anderson v. Cellco P'ship* (*In re Anderson*), No. 3:13-cv-00334-FDW-DLH (W.D.N.C. Feb. 10, 2016) (No. 40-2) (the "Opinion and Award"). The arbiter conducted a hearing on September 22 and 23 of 2015. The arbiter issued a decision on November 25, 2015 that found the Plaintiff was not entitled to a recovery.

The Plaintiff then filed the Motion on February 10, 2016 with the District Court—despite the fact that this Court granted the Consent Order that provided for the arbitration and the District Court had previously referred this case to this Court. On February 29, 2016, the Defendant filed the Response that requested the confirmation of the arbitration award. On March 8, 2016, the District Court referred the Motion to this Court.

Undeterred by the District Court's second referral in this case, the Plaintiff filed a motion to withdraw the reference with the District Court on March 10, 2016, which the District Court denied the same day. The Plaintiff subsequently filed a motion for certification of interlocutory appeal of the denial of the motion to withdraw the reference on March 11, 2016, and the District Court denied that motion as well on March 18, 2016. Finally, the Plaintiff filed a motion to

---

[4] Counsel for the Plaintiff admitted at the May 17, 2016 hearing on this matter that he recommended the arbiter.
[5] As noted above, the Complaint asserted claims under North Carolina tort law, namely intentional infliction of emotional distress and negligent infliction of emotional distress. Complaint at p. 10–11. Neither the docket for the Bankruptcy Court nor the District Court clearly shows these claims were withdrawn. Yet, these claims do not appear to have been brought to the arbiter's attention, and the Plaintiff has made no specific reference to them in his argumentation associated with the Motion that is apparent to this court. Accordingly, this Court will presume that the Plaintiff has abandoned the claims under North Carolina tort law.

reconsider the denial of the motion for interlocutory appeal in the District Court on March 21,

2016.  The District Court denied the motion to reconsider on April 13, 2016, and this Court

conducted a hearing on the Motion on May 17, 2016.[6]

### Bankruptcy Court's Ability to Issue Final Order on this Matter

Generally speaking, pursuant to 28 U.S.C. § 157, a bankruptcy court may enter final

orders on "core proceedings arising under title 11, or arising in a case under title 11," but a

bankruptcy court may only "submit proposed findings of fact and conclusions of law to the

district court" when a matter is "not a core proceeding but . . . otherwise related to a case under

title 11." § 157(b)(1), (c)(1); *but see Stern v. Marshall*, 564 U.S. 462, 482 (2011) (ruling that a

counterclaim under § 157(b)(2)(C) was not subject to the final determination of the bankruptcy

court notwithstanding the claim's statutory designation as a "core" matter).  However, a

bankruptcy court may still issue a final order on a matter "related to" a bankruptcy case under

§ 157 when parties consent to the bankruptcy court's final adjudication of the matter.  *Wellness

Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2014).

Here, it appears the claim for recovery under § 362(k) is a "core" matter under § 157

while the claims asserted under the TCPA and the NCDCA appear to be "related to" matters to

the extent they are distinct from the § 362 claim.[7]  However, the Court views the Consent Order

as an agreement by both parties to allow this Court to undertake a limited, final review of the

arbiter's award.   Accordingly, the Court believes this Order should be treated as a final

determination on all the claims presented to the arbiter.  To the extent the parties have not

---

[6] On May 23, 2016, the Plaintiff filed a Memorandum of Law in support of the Motion in adversary proceeding no. 14-03054 after the May 17, 2016 hearing, prompting the Defendant to file a response on June 3, 2016.  However, the Court did not invite any additional briefing after the May 17 hearing, making the Memorandum of Law procedurally improper.  Also, the Memorandum of Law's substance is already adequately addressed in this Order.
[7] To the extent that the action seeks to interpose state remedies for a bankruptcy stay and/or discharge violation, and for Supremacy Clause/preemption reasons, it is doubtful that these are viable claims.  Section 362(k) prescribes the remedies for such violations; whereas it is well settled law that violations of the 11 U.S.C. § 524 discharge are treated as contempt of court.

consented to this Court issuing a final review of the arbiter's determinations for the TCPA and

NCDCA claims, then this Order should be construed as proposed findings of fact and

conclusions of law in that regard.

### November 25, 2015 Arbitration Award  & the Plaintiff's Request for Vacatur

The Plaintiff's Complaint stems from the Defendant's contacts to him, made directly or

through a third-party vendor, after he filed his bankruptcy petition.   Prior to the petition, the

Plaintiff had entered into a cell phone services contract with the Defendant, and he asserted that

the Defendant attempted to collect on a pre-petition debt in violation of 11 U.S.C. § 362 through

various mailings and telephone calls.   However, the Plaintiff continued to use the cell phone

service after the petition date, and this fact casted some uncertainty as to what extent the

Defendant was attempting to collect on a debt for post-petition services, which would not be

prohibited by the automatic stay.   The Plaintiff also asserted that the Defendant's collection

attempts resulted in violations of the TCPA and the NCDCA.

In his Opinion and Award, the arbiter noted that there was some discrepancy as to when

the Defendant received notice of the bankruptcy for liability under § 362(k).  Opinion and Award

at 4.   The arbiter observed that the Plaintiff claimed the Defendant received adequate notice

through electronic transmission on December 14, 2009 while the Defendant claimed it did not

receive actual notice of the bankruptcy until January 27, 2010.   Ultimately, though, the arbiter

determined that the debate over when notice was effective was not a controlling issue because

the Defendant took steps to segregate the charges for pre- and post-petition usage after January

27, 2010, thereby demonstrating it was collecting for post-petition services.   *Id.* at 4–5.   In

addition, the arbiter noted that the Plaintiff continued to use the cell phone service until January

23, 2010, and it appeared that the Plaintiff was confused by the distinction between a collection

for a pre- and post-petition debt.  *Id.*  Based on the foregoing, the arbiter determined the Defendant should not be held liable for damages under § 362(k).

In regard to the TCPA claim, the arbiter pointed out that calls made to the Plaintiff's land line were forwarded to his cell phone with the Defendant, and calls made to the land line would not violate 47 U.S.C. § 227(b)(1)(A).[8]  *Id.* at 5.  Accordingly, the Plaintiff failed to establish an essential element of his TCPA claim.  In regard to the NCDCA claim, the arbiter acknowledged that the Plaintiff's counsel sent the Defendant a letter on May 26, 2010, but the letter did not amount to sufficient notice contemplated by N.C. GEN. STAT. § 75-55(3)[9] because the letter only referenced the automatic stay under 11 U.S.C. § 362.  *Id.* at 5–6.  Lastly, the arbiter concluded that the nature and number of the Defendant's contacts to the Plaintiff were not unreasonable and did not equate to harassment in violation of the other provisions of the TCPA or the NCDCA.

In his Motion, the Plaintiff suggests that the arbiter violated 9 U.S.C. § 10(a)(4) and manifestly disregarded the law in concluding the Plaintiff was not entitled to any recovery.  In regard to the automatic stay, the Plaintiff maintains that the Defendant was definitively served with notice of the bankruptcy through electronic transmission on December 14, 2009 pursuant to FED. R. BANKR. P. 9036, and any of the Defendant's contacts thereafter constitute violations of the automatic stay.  To conclude otherwise, according to the Plaintiff, would result in a manifest disregard of the law.  Similarly, the Plaintiff asserts that a single contact can amount to a violation of the TCPA or the NCDCA, and the arbiter manifestly disregarded the law in concluding the Plaintiff was not entitled to relief under either statutory scheme.

---

[8] 47 U.S.C. § 227(b)(1)(A) makes it generally unlawful to use an "automatic telephone dialing system or an artificial or prerecorded voice" to make a call to another person's "cellular telephone service . . . or any service for which the called party is charged for the call" without the "prior express consent of the called party."
[9] N.C. GEN. STAT. § 75-55(3) forbids a debt collector from "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer."

## Standard of Review for Arbitration Awards & Review of the Arbiter's Award

Pursuant to the express terms of the Federal Arbitration Act (the "FAA"), "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected",[10] and the FAA's "exclusive" grounds for vacating an arbitration award are listed in 9 U.S.C. § 10. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582–83 (2008) (quoting 9 U.S.C. § 9). Section 10(a) allows an arbitration award to be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Section 10 "limits courts' ability to vacate arbitral awards as part of [the FAA's] comprehensive scheme to replace judicial hostility to arbitration with a national policy favoring it." *Wachovia Sec. v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (citing *Hall Street*, 552 U.S. at 581). In adherence to this policy in favor of arbitration, § 10 "notably does not authorize a [court] to overturn an arbitral award just because it believes, however strongly, that the arbitrators misinterpreted the applicable law." *Id.* at 478 & n.5 (citations omitted). Parties that agree to arbitrate consent to "extremely limited appellate review," and "they assume the risk" that they may disagree with the arbitrator's interpretation of the law. *Id.* at 478 n.5 (citation omitted). Allowing a more "probing review" would risk "changing arbitration from an efficient alternative to litigation into a vehicle for protracting disputes." *Id.*

---

[10] Section 11 of the FAA lists the exclusive grounds for modifying or correcting an arbitration award. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582–83 (2008). No party in this matter is asking for relief under § 11.

Section 10(a) is not the thrust of the Plaintiff's argument.[11] Yet, after a review of the exhibits and argumentation presented to the arbiter, it appears that the arbiter decided the issues charged to his determination pursuant to the Consent Order, and his Opinion and Award effectuated a final ruling on the matters presented to him. Therefore, the Court is unable to conclude that the arbiter "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made" under 9 U.S.C. § 10(a)(4). Similarly, no basis for vacatur is present under the other express terms of § 10 of the FAA.

In addition to the explicit grounds listed in § 10, a court may vacate an arbitration award due to a "manifest disregard"[12] of the applicable law by the arbiter as opposed to an error in interpretation, which is not subject to judicial review. *Id.* at 480–81 (citing *Wilko v. Swan*, 346 U.S. 427, 456 (1953)). The Fourth Circuit employs the following two-part test of *Long John Silver's Rests. v. Cole*, for the manifest disregard standard: " '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[] refused to heed that legal principle.' " *Id.* at 483 (quoting *Long John Silver's Rests. v. Cole*, 514 F.3d 345, 349–50 (4th Cir. 2008)).

The *Long John Silver's* test for manifest disregard should not be understood as " 'an invitation to review the merits of the underlying arbitration,' or to establish that the arbitrator 'misconstrued' or 'misinterpreted' the applicable law." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015) (quoting *Brand*, 671 F.3d at 478 n.5, 481). Just the opposite is true. The *Long John*

---

[11] The Plaintiff mentions § 10(a)(4) as a possible basis for vacatur in the Motion, but the Motion's contentions are mainly related to the manifest disregard standard. The same can be said for the Plaintiff's argumentation at the May 17, 2016 hearing.

[12] The Supreme Court of the United States' decision in *Hall Street Assocs.* "has been widely viewed as injecting uncertainty into the status of manifest disregard as a basis for vacatur." *Wachovia Sec. v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012). Some Circuit Courts have found that manifest disregard "no longer exists." *Id.* at 483. The Fourth Circuit continues to recognize the manifest disregard standard, although it has not decided if manifest disregard persists as "an independent ground for review or as a judicial gloss." *Id.* In either case, the Fourth Circuit's standards for manifest disregard that existed pre-*Hall Street* continue to remain in effect. *Id.*

*Silver's* test ensures that "review for manifest disregard [does] not grow into the kind of probing merits review that would undermine the efficiency of arbitration." *Brand*, 671 F.3d at 483. A court's review for manifest disregard under the *Long John Silver's* test is not an occasion to "pass judgment on the strength of the arbitrator's chosen rationale," *Dancel*, 792 F.3d at 404 (citation omitted), and a party seeking to establish a manifest disregard of the law must prove "the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994) (citations omitted). In other words, an arbiter should only be understood to have "refused to heed" a legal principle under the *Long John Silver's* test if the arbiter willfully ignored a point of law, not imperfectly applied or misunderstood it.

To the extent the manifest regard standard is applicable,[13] the Court recognizes that the Opinion and Award explicitly considers the main points of law asserted by the Plaintiff: § 362(k), the TCPA, and the NCDCA. The arbiter did not dismiss or ignore these points of law; rather, he applied them to his understanding of the facts in light of the argumentation presented to him by the parties. Accordingly, the Court is unable to conclude that the arbiter manifestly disregarded the law by refusing to heed applicable legal principles.

In sum, whether the court is applying the express terms of § 10 or the "manifest disregard" standard, Fourth Circuit precedent forbids the review of an arbitration award as a conventional appeal. *See Raymond James Fin. Servs. v. Bishop*, 596 F.3d 183, 190 (4th Cir. 2010). "In fact, the scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate' " the essential purpose of

---

[13] As already noted, the Consent Order limits the grounds for vacatur of the arbiter's award to what is "specifically set forth in [§ 10(a)]." Consent Order, Doc. No. 17, p. 2. Since "manifest disregard" is not specifically listed in § 10(a), the court may be prevented from considering manifest disregard even if the standard persists as a "judicial gloss." Furthermore, manifest disregard would definitely fall outside the scope of review under the Consent Order if it exists as an "independent ground for review." However, this issue was not fully addressed by the parties, so the Court offers the discussion of the manifest disregard standard out of an abundance of caution.

arbitration as a quick and cost-effective alternative to litigation. *Id.* (citation omitted). As the Fourth Circuit has emphasized and made clear, a court reviewing an arbitration award "*is limited to determin[ing] whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.*" *Id.* (emphasis added) (citation omitted).

The record demonstrates that the arbiter "did the job" charged to him, and Fourth Circuit precedent prevents this Court from basing its review on whether the arbiter reached his conclusion "correctly" or even "reasonably."[14] Consequently, there is no adequate justification to vacate the arbiter's decision, and the Court must confirm the Opinion and Award pursuant to the FAA.

**Conclusion**

Based on the foregoing, the Motion is **DENIED**, and the Opinion and Award is **CONFIRMED**. The parties shall bear their own costs in regard to their efforts related to the Motion.

**This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.**                                    **United States Bankruptcy Court**

---

[14] As already belabored in this Order, whether or not the Court would have reached a decision different from the arbiter does not control the review of the Opinion and Award. Likewise, the Consent Order provides that, if the arbitration award was upheld, the Court would confirm the award "without comment on . . . [the Court's] views of the arbitrator's application of the law." *Id.* As such, the Court will refrain from pointing out how it may or may not have approached the issues presented to the arbiter differently.